Michael Garth Moore (023742)
6336 N. Oracle Rd. Suite 326, No. 119
Tucson, Arizona 85742
Telephone: 520-437-9440
mike@mgmoorelaw.com

*Trial Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Steven A. Saenz | Case No.:  4:22-cv-00047-TUC-JAS |
| Plaintiff, | |
| vs. | **FIRST AMENDED COMPLAINT** |
| Robert Lane | **JURY DEMAND ENDORSED HEREON** |
| and | |
| John Chavez | The Honorable James A. Soto |
| and | United States District Judge |
| The City of South Tucson, Arizona | |
| Defendants. | |

Now comes Plaintiff, and for his First Amended Complaint against Defendants states as follows:

## PARTIES AND JURISDICTION

1. At all times pertinent hereto, Defendant Robert Lane was a police officer employed in the capacity of Sergeant by The City of South Tucson, Arizona [hereafter, "the City"]. His acts and omissions alleged herein were in the course and scope of his

1

employment, and he is sued in his individual capacity. Defendant's actions and omissions were taken with malice or with reckless disregard to Plaintiff's rights under the Constitution of the United States;

2. At all times pertinent hereto, Defendant John Chavez was a police officer employed by The City. His acts and omissions alleged herein were in the course and scope of his employment, and he is sued in his individual capacity. Defendant's actions and omissions were taken with malice or with reckless disregard to Plaintiff's rights under the Constitution of the United States;

3. At all times pertinent hereto, the South Tucson, Arizona, by and through its City Council, was a political subdivision of the State of Arizona, and operated the South Tucson Police Department;

4. This Court has jurisdiction of this case under federal question jurisdiction, §28 U.S.C. §1331;

5. Venue is proper in this Court pursuant to 28 U.S.C. §1391;

6. The claims asserted by Plaintiff are brought to vindicate rights guaranteed Plaintiff under 42 U.S.C. §1983 for violations of the Fourth and Fourteenth Amendments to the Constitution of the United States;

**FIRST CLAIM: USE OF EXCESSIVE FORCE: VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS: DEFENDANTS LANE AND CHAVEZ**

7. Plaintiff realleges the previous Paragraphs as if fully set forth herein;

8. On the evening of October 12, 2019, Plaintiff was at the residence he shared with his girlfriend Reina Samaniego;

9. The two got into an argument, and in response, Samaniego's brother Jose Raul Samaniego approached the closed door of the ground-floor apartment and began shouting at Plaintiff;

10. The brother then began striking the door with a piece of rebar;

11. Jose Raul gained entry to the apartment and began striking Plaintiff with the rebar. Reina ran out of the apartment. Jose Raul struck Plaintiff's left forearm more than once as Plaintiff attempted to protect himself;

12. While this was happening, the mother, Rebecca Samaniego, who lived next door, shouted that she was calling the police;

13. The mother did make a call, and Plaintiff heard her reporting only that police were needed at the address. The mother did not report that Plaintiff had attacked anyone, nor that he had broken into the apartment;

14. Upon hearing his mother make the call, Jose Raul ran from the scene, taking the rebar with him;

15. Plaintiff, who was distraught and in pain from the beating, re-entered the apartment. Reina and her mother remained outside;

16. Plaintiff suffers from Post-Traumatic Stress Disorder [hereafter, "PTSD"], and the attack by Jose Raul had elevated the symptoms of the condition;

17. After several minutes, Plaintiff hear the mother yell, "The police are here!";

3

18. Upon hearing this, Plaintiff walked out of the apartment to the small parking area in the front of the complex, where his car was parked;

19. Upon walking into the parking lot, Plaintiff saw a police cruiser, lights on, stopped on East 29th street facing east. Plaintiff saw a uniformed officer, Defendant Sergeant Lane, and Plaintiff walked up to Lane, and they began talking. Lane and Plaintiff's conversation was calm and relaxed. Plaintiff was explaining what had happened, and showed Lane his arm where it had been injured;

20. While he was conversing with Lane, Plaintiff noticed another cruiser, lights flashing, pull up behind Lane's cruiser closer to the centerline of the street, effectively blocking the lanes;

21. The next thing he heard was Mrs. Samaniego say, "My daughter, he was choking my daughter" and almost at the same moment, saw a figure behind and off to the right side of Lane coming towards Plaintiff with the barrel of a handgun pointed at Plaintiff's head and screaming at him. Almost immediately, Plaintiff saw Lane draw a black weapon he thought was a firearm, pointed it at Plaintiff and Lane began shouting as well;

22. Plaintiff was terrified, and trying to respond to the officers' demands, lifting his shirt, holding it up to show he is not armed;

23. As Plaintiff was attempting to understand and comply, without warning, Lane fired his weapon – a Taser – the harpoon-like darts striking Plaintiff, and discharging thousand of volts of electricity into his body;

24. Plaintiff's body went into spasm, he fell, and then Lane discharged the Taser at least six (6) more times as Plaintiff was incapacitated on the street;

25. Both Lane and Chavez jumped on Plaintiff and repeatedly beat Plaintiff on the back of his head as he was incapacitated and offering no resistance;

26. With both Defendants having their knees and full weights on Plaintiff's back, Chavez emptied a CS gas canister in Plaintiff's face as Plaintiff attempted to protect himself from the Taser discharges and blows. Plaintiff lost consciousness, then revived;

27. Plaintiff, during all these events, was never warned that he was under arrest, nor was he given warning that Lane would shoot him with the Taser;

28. Plaintiff at all times never actively resisted the Defendants, and the repeated discharges of the Taser, the physical blows and the discharge of CS gas into Plaintiff's face was not justified nor reasonable under the conditions existing;

29. After Plaintiff was being assaulted, officers of the City of Tucson arrived and engaged in continuing the assault. After Plaintiff was hogtied by use of a "TARP," a device which is known to cause asphyxiation of the person, Plaintiff was  lifted by his arms and legs, causing extreme pain, and dragged him to the side of the street where he was dropped;

30. Although Defendants knew Plaintiff was injured and in and out of consciousness as a result of the assaults, they kept emergency responders from assessing Plaintiff's condition and administering aid, and when they did allow EMTs access to Plaintiff, they kept Plaintiffs hands and feet bound. Although Plaintiff's eyes and face had been pepper

sprayed, Defendants did not administer any first aid, flush his face with water, nor keep him upright. All these acts and failures to act exacerbated Plaintiff's pain;

31. Defendants were trained in the use of force, and their actions violated the specific training they had received from the Arizona Peace Officers Training Academy, the South Tucson Police Department, and other providers. Defendants' use of force against Plaintiff, commencing with Chavez's use of his service weapon, and Lane's firing his Taser into Plaintiff's body, violated specific provisions, including Policies 1.8.7, 1.8.8 and 1.8.9;

32. As a direct and proximate result, Plaintiff suffered extreme pain, emotional anguish, humiliation, exacerbation of his previous PTSD, impairment of function and incurred medical and hospital expense. Plaintiff will continue to suffer such injuries and damages into the future;

**SECOND CLAIM: RATIFICATION OF USE OF EXCESSIVE FORCE: VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENT: DEFENDANT THE CITY OF SOUTH TUCSON, ARIZONA**

33. Plaintiff realleges the previous Paragraphs as if fully set forth herein;

34. The City delegated to the Chief of Police and his department heads the final decision-making authority regarding internal practices, policies and investigations of police officers for violations of regulations, statutes and constitutional provisions;

35. Although the City promulgated policies and procedures requiring police officers to act within constitutional limits, the Chief of Police's custom and practice was to conceal officer's violations and to falsify reports and other documents, and destroy

evidence favorable to the citizen in order to conceal constitutional violations of use of excessive force on citizens;

36. As part of this custom and practice, the Department engaged in spoilation of evidence;

37. While Plaintiff was still at the scene of the incident, and following his transport to the hospital for assessment and treatment, Defendants Lane and Chavez met with, and conferred with STPD Sergeant Sean Masters, who took command of the scene;

38. Defendants Lane and Chavez conveyed the true facts of the assaults to Masters, aware that their actions had violated Plaintiff's right to freedom from unreasonable searches and seizures, and their use of excessive force, and the three police officers reached agreement to conceal the true facts;

39. Both Lane and Chavez subsequently, and with the knowledge and approval of Masters, documented false narratives of the events in order to conceal their violations of law;

40. The Chief of Police and his department heads knew of the true facts of the events of the night of October 12, 2019, knew that the two officers had brutalized Plaintiff, had violated Department policy on use of excessive force, knew that the actions constituted a violation of Plaintiff's right to privacy and bodily integrity;

41. The actions of the Chief of Police and department heads before October 19, 2019, communicated to STPD Sergeant Masters that his actions in concealing the extra-constitutional use of excessive force, including fabricating or directing the fabrication of

7

reports, communication logs and other records, and the spoilation of evidence, were accepted and expected of supervision;

42. The actions of the Chief of Police, his department heads and Sergeant Masters in facilitating the fabrication of evidence constituted ratification of the unconstitutional use of force and itself constituted ratification of the judicial deception;

43. As a direct and proximate result, Plaintiff suffered extreme pain, emotional anguish, humiliation, exacerbation of his previous PTSD, was jailed, suffered expenses of his defense. Plaintiff will continue to suffer such injuries and damages into the future; impairment of function and incurred medical and hospital expense, and incurred attorney fees and

WHEREFORE, Plaintiff demands judgment, jointly and severally, against each Defendant, as follows:

1. Under all Claims, damages in such amounts as the jury deems just;

2. Under the First Claim, punitive damages in such amounts as the jury deems just;

3. Interest, costs and an award of reasonable attorney fees pursuant to 42 U.S.C. §1988;

4. Such other relief as the Court deems just.

**JURY DEMAND**

Plaintiff requests trial by jury of all Claims.

/s/ Michael Garth Moore

8

Respectfully submitted,

*/s/* Michael Garth Moore
Michael Garth Moore (023742)
6336 N. Oracle Rd. Suite 326, No. 119
Tucson, Arizona 85742
Telephone: 520-437-9440
mike@mgmoorelaw.com

*Trial Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing was filed through the Court's electronic filing system on February 19, 2024. Notice of this filing will be sent to all parties and counsel through the Court's filing system. Parties and counsel may access the filing through the Court's system.

*/s/ Michael Garth Moore*

9